## Case No. 1,306.

### The BENJAMIN ENGLISH.

[2 Lowell, 218.] [1]

District Court, D. Massachusetts. March, 1873.

SEAMEN—WAGES.

1. Where the master of a vessel engaged in the coasting trade agreed with the owner for sixty dollars a month as wages for himself and for his minor son, who acted as cook, and it was understood that two-thirds of this sum were for the master's services and one-third for those of his son, and the owner of the ship had died insolvent,—held, the contract was severable, and

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

there was a lien on the vessel for wages due the son.

2. Where, in such a case, the master had received earnings of the vessel, but not enough to pay all the wages,—held, the net earnings so received were to be appropriated to the master's and cook's wages pro rata.

In admiralty. Wages. Libel by a boy of sixteen years old for services as cook on board the schooner Benjamin English, at twenty dollars a month. The schooner was employed in the coasting trade during the summer of 1872, and the evidence tended to show that the master, who was the father of the libellant, had agreed with the owner, who had since died insolvent, that he would serve for forty dollars a month, and his son for twenty dollars; that the master had received the earnings of the vessel and paid its disbursements, and had rendered an account in which a charge was made for the libellant and himself at sixty dollars a month, and by which a balance remained due to the master. The answer averred that the contract was solely with the master, at sixty dollars a month, and that he had more money in his hands than was needed to pay all that was due for the wages of both him and his son. None of the seamen signed any articles. [Decree for libellant.]

G. A. King and H. P. Harriman, for libellant.

J. M. Day, for claimants.

LOWELL, District Judge. The theory of the libel is, that the master engaged the libellant at twenty dollars a month, as he hired the other men, and that the owner of the vessel assented. The defence, as I understand it, is, that the contract was entire for the services of father and son for sixty dollars a month, payable to the father. It is proved, to my satisfaction, that the sum of sixty dollars was arrived at by estimating the wages of the master and cook at the several rates contended for by the libellant, and the contract was in its nature severable, or rather was two contracts, so that if either the libellant or his father had failed to perform his part, the other, having fulfilled his own, might sue for liquidated damages at the rate agreed on. And when it turns out that the owner's estate is deeply insolvent, the libellant may justly claim a lien for his services, like any other seaman, unless it be true, as alleged in the answer, that the father has actually received the payment for them. The father may, if he chooses, permit the libellant now to proceed, or may, as next friend, bring a libel in his name, notwithstanding the circumstances that he happened to be master of the same vessel. The master has no lien on the ship, by our law, but the master's son has one. The disability does not extend to his family.

On the other hand, I do not find the proof to be that the father had emancipated his child

quoad this voyage, and notified the owner thereof, so that a settlement could not afterwards be made with the former, or that payment to him would not release the debt. It was very candidly admitted at the argument, that it was not until the insolvency was discovered that this point was brought prominently to the mind of the father. In his evidence concerning the contract, which was admitted without objection, though perhaps part of it was not admissible, the other party having died, the father seemed to attempt to give the color of an emancipation to his conduct and conversation with the owner and with his son; but the account which he rendered, and his course of dealing with his son for years before, throw much doubt on his intentions, and even the facts that he gives do not seem to me to amount to such notice as would bind the owner to deal only with the son. If, therefore, it were true, as set up in the answer, that the master had funds unaccounted for, more than enough to pay the full sixty dollars a month, the son must look to the father for his pay. But the evidence has no tendency to bear out this allegation.

Still I do not regard the rights of this libellant to stand precisely like those of any other seaman. His contract is involved with that of his father: to the two together there would be due about four hundred dollars; and if the father has received out of freight-money two hundred of this, he cannot now say he will appropriate these payments exclusively to his own wages, for which he has no lien, and leave the libellant, or himself on the libellant's behalf, his full charge upon the vessel as against the general creditors. It was held by Judge Sprague, that, in some cases, a creditor having two debts is bound to appropriate a payment in the way most beneficial for the debtor, as, for instance, towards the debt for which he holds a lien; and certainly that rule would be peculiarly fitted to a case in which he pays himself out of money in his hands: The Antarctic, [Case No. 479.] I have decided that a rule of even more general application requires payments to be appropriated to the earliest items of an open account: The A. R. Dunlap, [Id. 513.] Taken either way, the result in this case is the same; and the wages of both father and son will be deemed paid pro rata, as they accrued, if the account shows that something has been received on account. It appears, then, to be the true rule for this case, that one-third of whatever remains due to the libellant's father should be held to be for the wages now sued for, and to that extent there is a lien on the schooner. The account was not fully examined at the trial, and I do not know whether there is enough remaining due to pay the libellant in full. If the parties cannot arrive at the balance due by their own investigations, it will be necessary to have it examined by me, or by an assessor.

Interlocutory decree for the libellant.